Coos
No. 82-058

GLORIA R. AVERY

v.

FRANK RANCLOES & a.

March 31, 1983

*Upton, Sanders & Smith*, of Concord (*Ernest T. Smith, III*, on the brief and orally), for the plaintiff.

*Law Offices of Philip R. Waystack, Jr.*, of Colebrook (*Vickie M. Bunnell* on the brief, and *Mr. Waystack* orally), for the defendants.

KING, C.J.  The plaintiff, Gloria R. Avery, brought a bill in equity to establish her title to certain land in Clarksville. The defendants, Frank Rancloes and his wife, Glenna Rancloes, are the owners of

property which is contiguous to the plaintiff's property. The parties' dispute concerns the proper boundary line between their properties. The defendants argue that the Trial Court (*Dunn*, J.) correctly found it to be the westerly side of Hurlburt Farm Road. The plaintiff contends that either the centerline of Hurlburt Farm Road or the barbed wire/cedar post fence on the easterly side of Hurlburt Farm Road is the proper boundary. (See diagram attached to this opinion.) We affirm.

The parties share a common predecessor in title, George W. Anderson, with respect to the land in dispute. On May 15, 1934, Anderson conveyed to Perley Chappel a triangular piece of land described as follows:

> "A certain tract or parcel of land situate in the Town of Clarksville, in the County of Coos in the State of New Hampshire, on the southerly side of the highway [West Road] leading from Keazer Corner, so-called in said Clarksville to Beecher Falls Village, bounded and described as follows:
>
> Northerly by the aforesaid highway [West Road]; *Easterly by the highway leading to the Hurlburt Farm,* so-called, and now owned by Perley Chappel; Southerly and Westerly by a stone wall. Said tract being triangular in form and containing two (2) acres, more or less . . . ."

(Emphasis added.)

The following year, this triangular piece of land was conveyed by Perley Chappel to Merle J. Young and Bessie I. Young, the plaintiff's predecessors in title, as part of a larger tract. The physical description of the triangular piece of land included in the larger tract was almost identical to the description in the deed from Anderson to Chappel. Finally, in May 1974, the Youngs conveyed a portion of their land, including the triangular piece originally conveyed by Anderson to Chappel, to the plaintiff. All of these deeds in the plaintiff's chain of title were recorded.

The defendants acquired their property, which lies both to the north and to the east of the plaintiff's property, directly from George W. Anderson and Annie E. Anderson in July 1958. Their deed is also recorded.

The trial court determined that sometime between 1935 and 1958, Anderson and the Youngs probably erected the barbed wire/cedar post fence along the east side of Hurlburt Farm Road. It also determined that the defendants maintained the fence after they acquired their property in 1958. The court found that the fence was built to keep cattle on the property, and was not intended to mark

the boundary between the properties. The court also found that Anderson permitted the Youngs to walk their cattle along Hurlburt Farm Road, and also permitted them to install a gate across the road to control cattle and keep trespassers out.

In January 1980, Mrs. Avery, who had purchased her property from the Youngs, closed and locked this gate. She then filed a bill in equity to establish title to the road alleging either that the Youngs' deed to her transferred title to Hurlburt Farm Road, or that she held title to the land by virtue of adverse possession. She claims, in the alternative, that even if she does not have title to the road, she acquired an easement to use the road because of adverse use.

The trial court rejected these arguments. It held that the boundary of the plaintiff's property was the west side of the road. The court stated that Chappel's deed to the Youngs established the boundary at the west side of the road and that the Youngs had owned no part of the road. Consequently, when the Youngs conveyed the land to the plaintiff, they could convey only what they owned, and, thus, the plaintiff's property reached only to the west side of the road. Finally, the court held that the plaintiff failed to prove her claim of adverse possession. The plaintiff appealed.

The plaintiff argues that the court erred in holding that she acquired no part of the road by deed. She claims that, in construing Anderson's deed to Chappel, the court should have applied the general rule that a conveyance of property bounded by a street or highway conveys title to the center of the boundary street unless clearly contrary language appears in the deed. *See Duchesnaye v. Silva*, 118 N.H. 728, 732, 394 A.2d 59, 61 (1978). We hold that the general rule was inapplicable, and therefore find no error in the trial court's holding.

■ The rule that a conveyance of property bounded by a street is intended to convey title to the center of the street is based on two presumptions. The first is that the owners of property adjoining the street originally furnished the land for the right of way in equal proportions. The second presumption is that an owner selling land bounded by the highway did not intend to retain the narrow strip of land which constituted the road, and therefore intended to sell to the centerline of the street. 6 G. THOMPSON, COMMENTARIES ON THE MODERN LAW OF REAL PROPERTY § 3068, at 669–70 (1962 Replacement).

It is clear that the general rule is inapplicable when we examine the facts of this case. In 1927, Charles Felton, Anderson's predecessor in title, owned the land on both sides of the disputed portion of Hurlburt Farm Road. Until that year, Hurlburt Farm Road was a

public road. In that year, the Town of Clarksville voted to discontinue the road. When it did so, full ownership of the road reverted to Felton. *See Sheris v. Morton,* 111 N.H. 66, 71–72, 276 A.2d 813, 816–17 (1971), *cert. denied,* 404 U.S. 1046 (1972). As the Minnesota Supreme Court stated in describing a similar situation, "[w]hat had been a street would be mere land. . . . The land which had been a street assumed exactly the same legal status as any other land which had not been impressed with a public easement." *White v. Jefferson,* 110 Minn. 276, 284, 124 N.W. 373, 375 (1910). *See Sanchez v. Grace M. F. Church,* 114 Cal. 295, 298–99, 46 P. 2, 3 (1896).

After the Town of Clarksville discontinued the road, Felton had title to the land which had constituted the road and to the land on both sides of it. There was nothing legally to distinguish the land which had constituted the road from the surrounding land. Thus, in 1934, when Felton transferred the entire tract to Anderson, he conveyed one large tract of land which was not encumbered by any highway or easement or by a private road.

■ When Anderson later conveyed part of this large tract to Chappel, the general rule that a conveyance of property bounded by a street conveys to the centerline of the street was inapplicable to the conveyance because there was no street or road, legally, and the presumptions supporting the rule were inapplicable.

Nor did the rule apply when Chappel later conveyed the same property to the Youngs, using language virtually identical to that used in Anderson's deed, because Chappel could convey only what he had received from Anderson. Similarly, when the Youngs conveyed the property to the plaintiff, they could convey only what they received from Chappel. For these reasons, we hold that the trial court was correct in not applying the rule suggested by the plaintiff.

The plaintiff's next claim is that she either holds title to the land west of the fence which runs along the east side of Hurlburt Farm Road based on adverse possession or has an easement to use the road based on adverse use for a period of twenty years. She claims that the barbed wire/cedar post fence was built and maintained by her predecessor, Merle Young, and his son from 1933 to 1974; that the fence was understood by Merle Young and George W. Anderson to be the true boundary between their contiguous land; that a gate on the Hurlburt Farm Road was built and maintained by the Youngs from 1935 to 1974; that the maintenance of the fence was of a character calculated to give notice to Anderson, the Rancloes' predecessor in title, of an adverse claim to the land by Avery's predecessors in title; and finally, that Gloria R. Avery and her predecessors in title, Merle Young and Bessie Young, have claimed all of the land

westerly of the barbed wire/cedar post fence, open and notoriously, without interruption for twenty years continuously.

Although the testimony on the claim of adverse use was conflicting, the court found that the fence had probably been built by Anderson and the Youngs together not to mark the boundary between the properties but as a fence to keep cattle in. The trial judge also found that, after 1958, the fence was maintained by the defendants and that the gate was probably built by the Youngs to control cattle and keep trespassers out, with the permission of Anderson. He further found that Anderson and the Youngs were friends and that Anderson allowed the Youngs to walk their cattle along Hurlburt Farm Road, and that Anderson also walked his cattle along that road. He held, therefore, that there was nothing adverse or hostile about the Youngs' use of the road or installation of the gate. The court held that the first time Gloria Avery took action which put the Rancloeses on notice of her claim of adverse possession was on January 3, 1980, when she closed and locked the gate.

Both of these claims required the plaintiff to show that the nature of her use, and that of her predecessors, was sufficient to put the owner on notice that an adverse claim was being made to the property. *Town of Weare v. Paquette*, 121 N.H. 653, 657, 434 A.2d 591, 594 (1981); *Ucietowski v. Novak*, 102 N.H. 140, 144, 152 A.2d 614, 618 (1959). It is well established that permissive use can never ripen into an adverse claim. *Id.* at 145, 152 A.2d at 618. Whether a use is adverse or permissive is an issue of fact to be determined by the trial court. *Ellison v. Fellows*, 121 N.H. 978, 981, 437 A.2d 278, 280 (1981). There was sufficient evidence before the trial court upon which it could reasonably find that the Youngs' use was not adverse, and, consequently, we will not overturn its findings. *Id.*, 437 A.2d at 280; *see Zivic v. Place*, 122 N.H. 808, 813, 451 A.2d 960, 964 (1982).

*Affirmed.*

All concurred.

RANCLOES PROPERTY

WEST ROAD

AVERY PROPERTY

GATE

AVERY PROPERTY

HURLBURT FARM ROAD

RANCLOES PROPERTY

BARBED WIRE FENCE PLAINTIFF'S CLAIMED BOUNDARY

CENTER LINE OF ROAD PLAINTIFF'S ALTERNATIVE BOUNDARY

WEST SIDE OF ROAD BOUNDARY DECREED BY COURT