Grafton
No. 96-692

JOHN C. GREENAN, JR. & a.

v.

RICHARD A. LOBBAN, JR. & a.

September 24, 1998

*Upton, Sanders & Smith*, of Concord (*John F. Teague* and *David P. Slawsky* on the brief, and *Mr. Slawsky* orally), for the plaintiffs.

*Orr & Reno, P.A.*, of Concord (*Charles A. Szypszak* on the brief and orally), for defendants Richard A. Lobban, Jr., Jean L. Thompson, Sarah L. Decker, and Dorothy D. Lobban.

*Engel & Gearreald, P.A.*, of Exeter (*David C. Engel* on the brief and orally), and *Jill A. DeMello*, of Newmarket, on the brief, for defendant Richard C. Doughty.

BROCK, C.J. Defendant Richard C. Doughty appeals a decision of the Superior Court (*Groff,* J.), challenging its ruling as to the location of the plaintiffs' deeded right-of-way. The plaintiffs, John C. Greenan, Jr., Albert and Louise Jordan, Richard and Janet Miller, Cloyed and Carol Ross, David Seely, and Philip Tapply, cross-appeal the superior court's conclusion that the defendants' properties extend to the natural high water line of Newfound Lake, and that the plaintiffs therefore have no right to use the beach. We affirm in part, vacate in part, and remand.

The defendants, Sarah L. Decker, Richard C. Doughty, James H. Hand, Nancy T. Hand, Dorothy D. Lobban, Richard A. Lobban, Jr., and Jean L. Thompson, own beachfront lots on the shore of Newfound Lake in Bridgewater. The plaintiffs own lots near the lake but not directly adjacent to the beach, and have a ten-foot-wide right-of-way which they use to access the beach. The source of title for all parties is a 1909 deed from Frank E. Dickerman to James G. Young, which reads, in part, as follows:

> Northerly by the Hoyt Brook, so-called; Easterly by the Mayhew Turnpike, so-called; Southerly by the highway leading over the point, so-called; and Westerly by Newfound Lake.

Young eventually subdivided the property and sold it in several conveyances. The first deed, to William Bailey, describes the property that is currently owned by defendant Doughty. The deed describes the northern boundary of the lot as "[b]eginning at a stake on the shore of Newfound Lake . . . thence running Westerly along the shore of said lake one hundred (100) feet to a stake."

Young subsequently conveyed to James A. Lobban a parcel of land "commencing at a stone bound on said road . . . thence northerly about one hundred and fifty five feet to Newfound Lake to a stone bound, thence northeasterly on said Lake fifty feet to a stone bound." Approximately thirty years later, Young's heirs conveyed to James A. Lobban two additional parcels. These deeds describe the land currently owned by defendants Richard A. Lobban, Jr., Jean L. Thompson, Sarah L. Decker, and Dorothy D. Lobban, and similarly characterize the northern boundary as running along the shore between artificial monuments.

Around the time of the second conveyance to James A. Lobban, G. Thornton Young, one of Young's heirs, exchanged letters with Lobban concerning the property. In a letter dated December 23, 1939, Lobban wrote:

> I note in the deed that the line on the east extends "northerly by said roadway to a stone post on the shore of Newfound Lake." I believe in our original notation I indicated "to Newfound Lake through a stone post on the shore." I am concerned about getting complete title to the shore. Would you ask your attorney whether the wording in the deed grants complete title to the shore.

G. Thornton Young responded affirmatively with the following, which he extracted from a letter he received from his attorney:

> There is no doubt that the other line carries the bound to the lake because the stone post is described as being "on the shore of Newfound Lake" and the next course runs by the shore of the lake, so, in our opinion, there is no chance for any question here.

The monuments in the defendants' deeds are referred to as stone posts, stone bounds, or stakes. Although the type of monument may vary among the deeds, the parties continuously refer to the line connecting these monuments as the "artificial high water line." The beach property north of the artificial high water line is at issue in this case.

The plaintiffs' title to their properties derives from Young's heirs' conveyance to Edward Mellus in 1940. In addition to conveying the property, these deeds conveyed "a strip of land 10 feet wide leading from Point Road, so-called, to the shore of Newfound Lake between land of James A. Lobban on the West and land of F. E. Litchfield and land of Grantor on the East." The plaintiffs' deeds all grant to them "the right to pass and repass" over this right-of-way.

The plaintiffs and their predecessors in title have used the beach at issue for at least forty years. Although they have primarily used the area of the beach in front of the right-of-way, their use of the beach has extended beyond the right-of-way's boundaries. In the 1980s, the defendants began asking the plaintiffs not to use the beach area outside of the boundaries of the right-of-way. The defendants claimed that they owned the beach, and, therefore, the plaintiffs had no right to use it. Defendants Lobban and Doughty each posted "No Trespassing" signs and constructed barriers beginning at the right-of-way's boundaries at the artificial high water line and extending across the beach to the lake, thus creating a small passageway within which the plaintiffs' use of the beach was confined.

The plaintiffs filed a petition to quiet title in superior court claiming the right to use the beach, up to the natural high water

mark, by deed and by prescription. The superior court rejected the plaintiffs' claims and concluded that the defendants owned the beach in front of their properties to the natural high water mark and had "exclusive littoral rights in the water and lake bed adjacent to their property to the exclusion of the Plaintiffs." The plaintiffs appeal.

The superior court also determined that the plaintiffs' ten-foot right-of-way extended "beyond the existing markers to the natural high water line of Newfound Lake," and that the plaintiffs could use the beach contained within the boundaries of the right-of-way. In addition, the superior court explained that "[t]he delineation of the right of way on the 'beach' shall be the continuation of the course of the present boundaries of the right of way." The court referred to defendant Hand's exhibit as accurately illustrating the general location of the parties' properties. Defendant Doughty appeals this determination, contending that the right-of-way as established by the trial court erroneously bisects his property, and results in an unreasonable use for the plaintiffs because the right-of-way ends at Dick Brown Brook rather than Newfound Lake.

██ We first address the plaintiffs' cross-appeal. The interpretation of deeds in a quiet title dispute is a question of law, which we review *de novo. See Flanagan v. Prudhomme,* 138 N.H. 561, 565, 644 A.2d 51, 55 (1994). "Our determination of disputed deeds is based on the parties' intentions gleaned from construing the language of the deed from as nearly as possible the position of the parties at the time of the conveyance and in light of surrounding circumstances." *Id.* at 565-66, 644 A.2d at 55.

[2] "A deed is patently ambiguous when the language in the deed does not provide sufficient information to adequately describe the conveyance without reference to extrinsic evidence." *Id.* at 566, 644 A.2d at 56. According to the deeds, the northern boundary of the defendants' properties runs between stone monuments "along the shore." The defendants argue that "along the shore" refers to the natural high water line and, because natural monuments prevail over artificial monuments, *see Mastin v. Prescott,* 122 N.H. 353, 355, 444 A.2d 556, 558 (1982), the northern boundary of their lots is at the natural high water line rather than the artificial high water line formed by the monuments. The plaintiffs, however, argue that the phrase "along the shore" is a general description, and because particular descriptions in a deed control over general descriptions, *see Sorenson v. Wilson,* 124 N.H. 751, 755, 476 A.2d 244, 246 (1984); 14 R. POWELL, POWELL ON REAL PROPERTY ¶ 899[3][b], at

81A-110 (1998), the boundary should be at the artificial high water line. After considering the parties' arguments, we conclude that the terms of the defendants' deeds are ambiguous. Thus, we look to extrinsic evidence of the parties' intentions in interpreting the deeds. *See Flanagan*, 138 N.H. at 566, 644 A.2d at 56.

The letters exchanged between G. Thornton Young and James A. Lobban provide powerful evidence of the grantor's intent. According to G. Thornton Young's letter responding to Lobban's concerns, he intended to convey complete title to the shore. We agree with the trial court that these letters are probative of the grantor's intent and clarify the terms of the deed.

■ Furthermore, in a 1962 conveyance by Young's heirs to Frances and Elizabeth Seely, the deed stated that the conveyance constituted the "remaining portion of the premises conveyed to James G. Young by Frank E. Dickerman by deed dated July 7, 1909." This language suggests that after his conveyance to the Seelys, Young believed he had conveyed all of his property, including the beach. We therefore agree with the trial court that the northern boundary of the properties belonging to defendants Lobban, Thompson, Decker, Doughty, and Hand is at the natural high water line.

The plaintiffs alternatively claim that they have a prescriptive easement to the beach. "To establish a prescriptive easement, the plaintiff must prove by a balance of probabilities twenty years' adverse, continuous, uninterrupted use of the land claimed in such a manner as to give notice to the record owner that an adverse claim was being made to it." *Opinion of the Justices (Public Use of Coastal Beaches)*, 139 N.H. 82, 92, 649 A.2d 604, 610 (1994) (quotation and brackets omitted). The trial court rejected the plaintiffs' prescription claim because, *inter alia*, the plaintiffs failed to prove that their use of the beach was not permissive. We agree.

■ "[T]he absence of permission is an element of a 'claim of right,' which is in turn an essential element of a claim for a prescriptive easement that the claimant must prove by a preponderance of the evidence." *Town of Warren v. Shortt*, 139 N.H. 240, 244, 652 A.2d 140, 142 (1994). Prior to the 1980s, the defendants maintained a friendly relationship with the plaintiffs and their predecessors in title, and allowed them to use the beach outside of the right-of-way's boundaries. The plaintiffs failed to provide sufficient evidence to compel a finding that their use of the beach was not permissive. Therefore, the trial court's ruling on this issue was not erroneous.

We next address defendant Doughty's appeal, in which he contends that the superior court erroneously concluded that the plaintiffs' right-of-way bisects his property. Specifically, Doughty argues that the court erred in referencing and attaching defendant Hand's exhibit D to its order. According to exhibit D, the plaintiffs' right-of-way would end at Dick Brown Brook, not Newfound Lake, if it continued the course of its present boundaries as the trial court ordered. Doughty argues that this result contradicts the express language of the deeds, as the right-of-way would bisect his property instead of lying between his property and defendant Lobban's property.

We agree that the superior court's order regarding the location of the plaintiffs' right-of-way is erroneous. The superior court's referral to exhibit D, according to which the plaintiffs' right-of-way would lead to Dick Brown Brook, was internally inconsistent with its other findings. First, the court specifically determined that the right-of-way runs to the "natural high water line of Newfound Lake." Second, the court found that the grantor's intent in conveying the right-of-way was "to provide a travel route between the lake and the road." These findings are inconsistent with the court's finding that the right-of-way ends at Dick Brown Brook. More importantly, a right-of-way leading to Dick Brown Brook cannot be reconciled with the plaintiffs' deeds, which explicitly provide that the right-of-way should extend "to the shore of Newfound Lake."

We also agree that the right-of-way south of the artificial high water mark should lie between Lobban's property, which borders the right-of-way on the west, and Doughty's property, which borders the right-of-way on the east. This conclusion is in accordance with the language of the defendants' deeds, describing the boundaries of their lots, as well as the plaintiffs' deeds, describing the boundaries of their right-of-way. We therefore vacate the superior court's ruling as to the location of the plaintiffs' right-of-way and remand for further proceedings consistent with this opinion.

*Affirmed in part; vacated in part; and remanded.*

BRODERICK, J., sat but did not participate in the decision; the others concurred.