**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2015-0629, <u>Brittany Place Condominium Association v. F. Lavoie Apartments, Inc.</u>, the court on June 22, 2016, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). We affirm.

The plaintiff, Brittany Place Condominium Association (possessor), appeals an order of the Superior Court (<u>Colburn</u>, J.) in favor of the defendant, F. Lavoie Apartments, Inc. (owner), in its action to quiet title and for other equitable relief. The possessor argues that the trial court erred by: (1) finding that the possessor's use was not sufficiently notorious or exclusive to establish adverse possession; and (2) not considering "the character of the use as it relates to the nature of the possessed areas." The possessor further argues that a condominium association may acquire land by adverse possession.

To acquire title to real property by adverse possession, the possessor must show twenty years of adverse, continuous, exclusive, and uninterrupted use of the land claimed so as to give notice to the owner that an adverse claim is being made. <u>O'Hearne v. McClammer</u>, 163 N.H. 430, 435 (2012). Absent actual notice to the dispossessed party of the adverse possession, the law requires more than occasional, trespassory maintenance of another's property to perfect adverse title; the use must be sufficiently notorious to justify a presumption that the owner was notified of the claim. <u>Id</u>. Possession is notorious when it is of such character that it would have been revealed through due inquiry. <u>Mastroianni v. Wercinski</u>, 158 N.H. 380, 384 (2009). The burden of proving adverse possession is on the party claiming it. <u>Blagbrough Family Realty Trust v. A & T Forest Prods.</u>, 155 N.H. 29, 34 (2007). In evaluating the merits of an adverse possession claim, courts construe evidence of adverse possession strictly. <u>Id</u>. at 33.

Whether the occupation of land was of such a character as to apprise an ordinarily prudent owner that the possessor was claiming title is a question of fact. <u>Weeks v. Morin</u>, 85 N.H. 9, 12 (1931). We review a trial court's application of law to facts <u>de</u> <u>novo</u>, but we defer to a trial court's findings of fact, when those findings are supported by evidence in the record, <u>Blagbrough</u>, 155 N.H. at 33, and particularly when, as in this case, they were based upon the trial court's view of the property, <u>see</u> <u>Flanagan v. Prudhomme</u>, 138 N.H. 561, 574 (1994). We will reverse the trial court's findings and rulings only if they are unsupported by the evidence or are erroneous as a matter of law. <u>Town of Warren v. Shortt</u>, 139 N.H. 240, 242 (1994).

In this case, the trial court, relying upon Blagbrough, found that the possessor's use of the property was not sufficiently exclusive or notorious to place the owner on notice of its claim because: (1) cutting the owner's trees "was a one-time occurrence that . . . cannot be considered more than an occasional trespass"; (2) planting bushes, mowing weekly, and maintaining the disputed areas seasonally constituted "merely trespassory maintenance"; and (3) the possessor's residents' walking through the disputed areas "from time to time" was "a minimal use." These findings were supported by the record and the trial court's view.

The possessor argues that the trial court erred in relying upon Blagbrough because here: (1) the possessor's cutting of the owner's trees, unlike the removal of the dilapidated boathouse in Blagbrough, "established a demarcation, like a fence or wall, separating the encroachment areas from [the owner's] forest and incorporating the possessed land into the [possessor's] yards and landscaped areas"; and (2) its use and maintenance of the disputed areas made them "indistinguishable from its own land but entirely distinguishable from [the owner's] land." The possessor argues that, unlike the owner in Blagbrough, the owner here "would have seen that its trees had been cleared and that the [possessor] was maintaining and using the land in a manner that separated the encroachment areas from [the owner's] property and made them indistinguishable from the [possessor's] property." It contends that, as a result, the owner had "constructive notice that portions of its land had been cleared of trees and were being used by the [possessor] as yard and landscaped areas."

However, these are not the facts that the trial court found. See Weeks, 85 N.H. at 12. The trial court found that "the disputed areas are hilly regions that consist of a mix of natural grass, moss, dirt patches, and rocks"; it did not find that they were indistinguishable from the possessor's land. The owner testified that the tree line was "jagged" and that the two smaller disputed areas were "slopey," "rough," had "a lot more moss on the ground than there was grass," and were "by no means a nice full lawn." Regarding the third disputed area, the owner testified that the bushes were "just an overgrown planting and some grass along the roadway." The trial court found that the bushes had "expanded over time," and likened the possessor's use of the disputed areas "to the grass cutting, tree removal, and flower planting held insufficient in Blagbrough."

The possessor's reliance upon the unreported decision in Sea Pines Condo. III Ass'n v. Steffens, No. 07–P–687, 2008 WL 419052672 (Mass. App. Ct. Sept. 15, 2008), is misplaced. That opinion states that, even though the party claiming by adverse possession had cleared an area "to the sand" and then trimmed shrubs growing on it twice a year, its use was not notorious because "the record is devoid of evidence that had the true owner observed the property, she would have concluded that someone was maintaining it." Sea Pines, 2008 WL 419052672, at *5. Similarly, here, the owner testified that the possessor's

2

encroachment on to its land "would be very difficult to tell" "without the proper staking and the proper knowledge of where the [boundary] line is."

The possessor argues that the trial court "merely considered the frequency of the [possessor's] use of the encroachment without taking into account the relationship between the character of the use and the nature of the land." However, the trial court viewed the disputed areas and addressed their locations, two of which were behind individual condominium units and one of which was at the end of a cul-de-sac. Furthermore, it addressed the nature of the possessor's use, noting that the possessor had cut the owner's trees, "mowed periodically, treated for weeds, and seasonally maintained" the disputed areas, had mulched one of the areas for a few years, and planted juniper bushes in another, which had expanded over time, but had not used the areas for community activities. Accordingly, we conclude that the trial court considered more than the frequency of the possessor's use.

The possessor argues that its use could not be interpreted as "neighborly accommodations." However, the standard is whether its actions were sufficient to notify the owner of its adverse claim to the areas. See O'Hearne, 163 N.H. at 435. The possessor argues that the trial court adopted "a bright-line test requiring the installation of a fence or wall or other structure in the encroachment areas and rejecting any and all maintenance of yard and landscaped areas" as evidence that it provided the owner with notice of adverse possession. However, the trial court did not require a fence or other structure. Instead, it considered the possessor's cutting of the owner's trees and subsequent actions in the disputed areas and found that its use was not sufficiently notorious. Because this finding is supported by the evidence and not erroneous as a matter of law, we will not overturn it. See Shortt, 139 N.H. at 242.

Because we conclude that the possessor has not carried its burden of proving adverse possession, we need not address whether a condominium association can acquire land by adverse possession.

Affirmed.

Dalianis, C.J., and Hicks, Conboy, Lynn, and Bassett, JJ., concurred.

**Eileen Fox,
Clerk**